Ronald Cupp
150 Raley Town Center Ste 2512
Rohnert Park, California [94928]
Emergency Cell: (707) 318-9929
ronc2009@gmail.com

FILED
FEB 12 2024
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Ronald Cupp,<br><br>Plaintiff,<br><br>vs.<br><br>LEXISNEXIS SOLUTIONS<br>LEXISNEXIS RISK DATA MANAGEMENT INC.<br>LEXISNEXIS RISK DATA MANAGEMENT LLC.<br>LUNDQUIST CONSULTING, INC.<br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>EQUIFAX INFORMATION SERVICES, LLC.<br>TRANS UNION, LLC.<br>EARLY WARNING SERVICES, LLC.<br>DOES 1-10<br><br>Defendants. | CASE NO: CV24 0833 RFL<br><br>**COMPLAINT FOR DAMAGES**<br><br>VIOLATION OF 15 USC 1681 *et seq.* FCRA;<br>VIOLATION OF CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT (CCRAA) CC 1785 *et seq.*<br>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.<br><br>DEMAND FOR TRIAL BY JURY |

**COMPLAINT**

Plaintiff, Ronald Cupp, individually hereby sues above named Defendants for violations of the FCRA 15 USC §1681, and The California version of the FCRA—the Consumer Credit Reporting Agencies Act (CCRAA) Cal. Civ. Code § 1785, and other Federal and State Statutes. Plaintiff contends that the Defendants have violated Plaintiffs consumer protections and such

laws by repeatedly reporting inaccurately Plaintiffs data publicly in the Credit Reports, negligently and willfully, thereby intentionally, even though disputed by Plaintiff to Defendants. They did this by willfully recklessly reporting Plaintiffs consumer transactions, (bankruptcy), without the possibility of verifying or validating and intentionally reporting inaccurate data. All Defendants caused Intentional Infliction of Emotional Distress with negligent or willful intent.

## JURISDICTION AND VENUE

1.       Jurisdiction of this Court arises under 15 U.S.C. §1681p, California Stat. § 1785, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. §1367, Defendants conduct business in the state of California and therefore, personal jurisdiction is established. Jurisdiction arises under Cal. Civ. Pro. §410.10. Defendant conducts business in the state of California and therefore, personal jurisdiction is established.

2.       Venue is proper pursuant to 28 U.S.C. §1391b and Cal. Civ. Pro. §395(a). Venue in this District is proper in that the Plaintiff resides here, the Defendants transact business here, and the conduct complained of occurred here.

## PARTIES

3.       Plaintiff, Ronald Cupp, ("CUPP") is a natural person and is a resident of Sonoma County, California.

4.       LEXISNEXIS SOLUTIONS (hereinafter LEXISNEXIS) a furnisher of information and a credit reporting agency at 1000 Alderman Drive, Alpharetta, GA 30005, with agent for service CT CORPORATION SYSTEM 330 N. Brand Blvd, Glendale, CA. being sued in its corporate capacity.

5.       LEXISNEXIS RISK DATA MANAGEMENT, INC. (hereinafter LEXIS INC.) a furnisher of information and a credit reporting agency at 1000 Alderman Drive, Alpharetta, GA

30005, with agent for service CT CORPORATION SYSTEM 330 N. Brand Blvd, Glendale, CA. being sued in its corporate capacity.

6. LEXISNEXIS RISK DATA MANAGEMENT, LLC (hereinafter LEXIS LLC.) a furnisher of information and a credit reporting agency at 1000 Alderman Drive, Alpharetta, GA 30005, with agent for service CT CORPORATION SYSTEM 330 N. Brand Blvd, Glendale, CA. being sued in its corporate capacity.

7. LUNDQUIST CONSULTING, INC. (hereinafter LCI) a furnisher of information and a credit reporting agency at C/O INSURANCE SERVICES OFFICE, INC. 545 Washington Blvd 21st Flr, Jersey City, NJ 07310 with agent for service LAWYERS INCORPORATING SERICE 2710 Gateway Oaks Drive, Sacramento, CA. being sued in its corporate capacity.

8. EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter EXPERIAN) a Credit Reporting Agency (CRA) at 475 Anton Blvd, Costa Mesa, CA with agent for service CT CORPORATION SYSTEM 330 N. Brand Blvd, Glendale, CA. being sued in its corporate capacity.

9. EQUIFAX INFORMATION SERVICES, LLC. (hereinafter EQUIFAX) a Credit Reporting Agency (CRA) at 1550 Peachtree Street NE, Atlanta, GA with agent for service THE PRENTICE-HALL CORPORATION SYSTEM, INC. 2710 Gateway Oaks Drive, Sacramento, CA. being sued in its corporate capacity.

10. TRANSUNION, LLC. (hereinafter TRANSUNION) a Credit Reporting Agency (CRA) at 2 Baldwin Place, P.O. Box 2000, Chester, PA 19022, being sued in its corporate capacity.

11. EARLY WARNING SERVICES, LLC. (hereinafter EWS) a Credit Reporting Agency (CRA) at 5801 N. Pima Road, Scottsdale, AZ 85250 with agent for service COGENCY GTLOBAL, INC. 1325 J Ste 1550, Sacramento, CA. being sued in its corporate capacity.

12. Upon information and belief, the above Defendants LEXISNEXIS, LEXIS INC., LEXIS LLC, LCI, EWS are Credit Furnishers hereinafter DEFENDANT FURNISHERS, and **submit and report data to each other** and to EXPERIAN, EQUIFAX, and TRANSUNION Defendants, hereinafter Credit Reporting Agencies, known as CRA's. "Consumer reporting agency," as defined in 15 USC § 1681(f).

13. Upon information and belief, Credit furnishers and reporting agencies are regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d) to third parties.

14. Upon information and belief, Credit furnishers disburses such consumer reports to third parties under contract for monetary compensation.

15. Defendants are entities which furnish and report, bringing within the gambit of California Consumer Credit Reporting Agencies Act (CCRAA) Cal. Civ. Code § 1785 *et seq.*

**FACTUAL ALLEGATIONS**

16. Plaintiff is a consumer per FCRA 15 U.S.C. §1681a(c).

17. Defendants LEXISNEXIS, LEXISNEXIS, INC., LEXISNEXIS, LLC. LCI are a furnisher of information to one or more of the other defendants. These "furnishers" prepared and issued credit reports concerning plaintiff which include inaccurate information.

18. **All Defendants** are a "consumer reporting agency" hereinafter CRA, as defined in the FCRA 15 U.S.C. 1681a(f).

19. On May 4, 2015 Plaintiff disputed the Bankruptcy to Equifax Information Services LLC CERTIFIED 7014 1820 0000 0454 4086; TransUnion CERTIFIED 7014 1820 0000 0454 4062; Experian CERTIFIED 7014 1820 0000 0454 4079; Including tradelines and

reinvestigation. Soon thereafter, the Bankruptcy was removed from my report from one (or more) of the CRAs, but then over time was reinserted and rereported inaccurately from then on.

20. On August 24, 2015 Plaintiff was denied services from Wells Fargo on Deposit Account Adverse Action Notice, due to adverse reporting from EQUIFAX, EXPERIAN, EWS, and TRANSUNION. Plaintiff immediately sent out a notice of my denial of credit to all four of the CRA's.

21. On January 18, 2023 Plaintiff disputed the Bankruptcy to LEXISNEXIS SOLUTIONS CERTIFIED 7021 2720 0002 7075 3746; LEXISNEXIS RISK DATA MANAGEMENT INC. CERTIFIED 7021 2720 0002 7075 3753; LEXISNEXIS RISK DATA MANAGEMENT LLC CERTIFIED 7021 2720 0002 7075 3760.

22. On January 20, 2023 Plaintiff wrote to US Bankruptcy Court Northern California CERTIFIED 7021 2720 0002 7075 3777 Stating the CRAs used data/info from the Court as the source of or furnisher of info.

23. On January 24, 2023 TRANSUNION wrote to Plaintiff that TRANSUNION reports bankruptcy public records on credit reports. For bankruptcy public records collected **through November 30, 2018**, TRANSUNION obtained information about your bankruptcy from third-party vendor, LEXISNEXIS. LEXISNEXIS may be contacted using the information provided below.

LexisNexis Risk Data Management Inc., LexisNexis Consumer Center, P. O. Box 105615 Atlanta, GA 30348-5108,

https://transunionconsumers.lexisnexis.com/

For bankruptcy public records **collected after** November 30, 2018, TransUnion obtained information about your bankruptcy from third-party vendor, LCI. LCI may be contacted using the information provided below.

LCI, LCI Consumer Center, P. O. Box 1582, Burlingame, CA 94010

www.lciinc.com/transunionconsumers/

24. On January 24, 2023, Plaintiff disputed the Bankruptcy to, LCI Consumer Center CERTIFIED: 7021 2720 0002 7075 3784

25. On January 25, 2023 the US Bankruptcy Court NDCA responding to my January 20, 2023 dispute, stated they have no jurisdiction over reporting of any credit reporting, stated they do not release information or data and that the FCRA 1681(c) CRA's are responsible that.

26. On January 25, 2023 Plaintiff sent a second request to US Bankruptcy Court Northern District California CERTIFIED: 7021 2720 0002 7075 3807 stating: The reporting agencies show ***your court as the source of information*** on the Credit Report. "See ***attached enclosure from TransUnion*** stating you/your court is the source of information". Plaintiff does not believe this is accurate.

27. On January 27, 2023 LexisNexis responded Consumer Number 25880931 Case Number 56970021, unable to authenticate and cannot provide details of the reinvestigation.

28. On January 27, 2023 the US Bankruptcy Court again responded to my January 25, 2023 stating they have no jurisdiction over the reporting of information or over credit reporting agencies.

29. On April 3, 2023 Plaintiff disputed Plaintiffs Public Records and reinvestigation with the Credit Reporting Agencies: Equifax CERTIFIED 7021 2720 0002 7075 3913, TransUnion CERTIFIED 7021 2720 0002 7075 3920, Experian CERTIFIED 7021 2720 0002 7075 3937.

30. On June 8, 2023 Plaintiff applied for and on June 15, 2023 Plaintiff was denied a loan of $200,000.00 from Fuentes & Associates, Inc., after pulling Plaintiffs credit report, due to inaccurate reporting of the disputed Bankruptcy. Fuentes & Associates, Inc. used CREDIT

TECHNOLOGIES 50481 W. Pontiac Trial, Wixom, MI 48393 who obtained the inaccurate information from EXPERIAN, TRANSUNION, and EQUIFAX. On information and belief they received the inaccurate information from LEXISNEXIS, LEXIS, INC., LEXIS, LLC., and LCI who were acting as CRAs and furnishers to EXPERIAN, TRANSUNION, and EQUIFAX. Soon after I received a NOTICE TO THE LOAN APPLICANT (me, Plaintiff) from FUENTES & ASSOCIATES, INC., based on the information from the denial of credit.

31. On September 27, 2023 Plaintiff received a letter from Credit Technologies, Inc. regarding credit inquiries appearing on Plaintiffs credit report. Stating again that they received the information from EXPERIAN, TRANSUNION, and EQUIFAX.

**ACCURACY REQUIREMENTS FOR REPORTING AND OTHER REQUIREMENTS FOR FURNISHERS AND CREDIT REPORTING AGENCIES**

32. Per the Gramm-Leach-Bliley Act, CRA's qualify as financial institutions under the act, and they are subject to its provisions. See also paragraph 68 following.

33. The Act requires that CRAs to utilize reasonable procedures to ensure maximum possible accuracy of the information in a report, The FCRA also requires that the CRA properly conduct a reinvestigation after the consumer disputes the accuracy of information.

34. Violations of either of these duties subject a CRA to actual damages and attorney fees if the failure is negligent. If the failure is willful, the CRA can be held liable for statutory and punitive damages. (15 USC 1681n)

35. Consumer reporting agencies commonly assert that information is "accurate" if the CRA accurately passes on the data provided by their furnishers. This argument has been almost universally rejected.

36. Merely parroting what a creditor reports may not fulfill the "maximum possible accuracy" obligation, once a CRA is notified of a dispute. (FTC Staff Summary § 607(b) items 4B and 5A, § 611 items 3A and 4 (2011).

37. Regulation V includes a definition for purposes of the furnisher accuracy (Hurst v. Equifax Info. Servs., L.L.C., 2021 WL 5926125, at *5 (W.D. Tex. Dec. 15, 2021), citing Watkins v. Experian Info., Sols., Inc., 2014 WL 12879669, at *5 (W.D. Tex. Sept. 8, 2014). The concept of "accuracy" is an objective one. **A consumer report either is or is not accurate.** If it is accurate when prepared a certain way, it will always be accurate when prepared that same way. *You are either pregnant or not, there is no middle ground.*

38. The FCRA and the CCRAA requires more than technical or literal accuracy; it requires "maximum possible accuracy of the information concerning the individual about whom the report relates." As the Third Circuit has noted, "the distinction between 'accuracy' and 'maximum possible accuracy' is not nearly as subtle as may at first appear, it is in fact quite dramatic."

39. Thus, a consumer report is inaccurate not just for a blatant error, but also if it is potentially misleading. As the Fourth Circuit stated, "a technical truth . . . can be as misleading as an outright untruth where it paints a misleading picture."

40. All federal Courts of Appeal considering the issue have adopted this "maximum possible accuracy" approach, which holds that a credit item can be incomplete or inaccurate within the meaning of the FCRA either because it is patently incorrect, or because it is misleading "in such a way and to such an extent that it can be expected to adversely affect credit decisions."

41. *The question of whether information is "materially misleading" is one for the finder of fact.* For courts following this standard, a *plaintiff need not prove that any recipient was actually misled* by the information, so long as it is misleading enough to be "objectively likely" to cause the intended user to take an adverse action.

42. A failure to mark a debt as disputed may be an omission that is misleading and therefore inaccurate, if the dispute is meritorious and bona fide. Similarly, reporting an account as "disputed resolved-customer disagrees" can be misleading because the statement that "the dispute was 'resolved' plainly contradicts" *the opposite message that the information continues to be disputed.*

**MAY NOT REPORT UNVERIFIABLE INFORMATION**

43.     While a CRA is entitled to presume that its furnisher is otherwise a reliable source, *once it determines that a credit item cannot be "verified," it is no longer entitled to report it.* Typically, CRAs hold fast to the belief that they are entitled to report any information that cannot be conclusively determined to be inaccurate. This presumption is completely contrary to that demanded by the FCRA. *A CRA may not report information which it concludes is unverified or indeterminable.* Similarly, a CRA must delete an item when it has attempted to determine whether the item is accurate and is unable to do so, whatever the reason. CRAs are not entitled to report any information they wish. In light of the FCRA's remedial purpose and strict "maximum possible accuracy" standard, *uncertainty or doubt should be resolved in the consumer's favor. Unverifiable information is tantamount to inaccurate information.*

44.     Public records vendors (like our defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS) collect information from the dockets of various courthouses around the country. They sometimes hire subcontract personnel to make in-person trips or telephone calls to gather information from courthouses. In other cases, as courts make their dockets available online, they collect information electronically through automated resources.

45.     Bankruptcies are obtained electronically from the federal court's PACER system.

46.     LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS now sells this information to creditors and other users directly, as well as to specialty CRAs—raising questions as to whether their product poses the same matching issues addressed by CFPB supervision and the multistate Attorneys General settlement. *This also makes* LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS *CRA's*, and thus it is governed by both the requirement to follow reasonable procedures to ensure accuracy under section 1681e(b) and the reinvestigation requirements of section 1681i.

47. CRAs cannot just report verbatim whatever is provided them by their sources; they must have procedures in place to ensure that the information from those sources is accurate.

48. CRAs, for example, must inform a source that if its customer disputes an account, the dispute should be noted in the information furnished to the CRA.

49. Thus, the critical factor in determining the reasonableness of a CRA's reliance on a furnisher is the degree of notice that the CRA has as to the furnisher's unreliability. *When a consumer makes a dispute, the CRA has been made aware of inaccurate information* and it may no longer blindly parrot the furnisher.

50. If a CRA had reason to suspect the accuracy of a source of information, or if a consumer has already indicated a possible error, then the CRA has a responsibility to investigate more carefully.

**FURNISHERS CANNOT MEET THEIR PRELIMINARY ACCURACY STANDARDS WHEN REPORTING BANKRUPTCIES FROM THEIR SOURCES.**

51. Federal Courts have their disclaimers as follows:

> The provider does not represent or warrant that this site or its content will be error-free, free of viruses or harmful components, or that defects will be corrected or that it will always be accessible. The provider may make improvements and/or changes to the features, functionality, or content of this site at any time.
>
> **DISCLAIMER:** This website and its content are provided on an 'As Is, as Available' basis. *Provider expressly disclaims all warranties.* Provider disclaims all responsibility for any loss, injury, claim, liability, or damage of any kind in any way related to *(A) any errors in or omissions from this web site and the content, including but not limited to technical inaccuracies and typographical errors,* (B) the unavailability of this web site, *the content,* or any portion thereof, (C) your use of this web site or the content, or (D) your use of any equipment or software in connection with this web site or the content.

52. Pacer, the Court Reporting system has their disclaimers as follows:

> **IMPORTANT NOTICE OF REDACTION RESPONSIBILITY:**
> All Filers must redact: *Social Security or taxpayer identification numbers; dates of birth; names of minor children; financial account numbers;* and in criminal cases, home addresses in compliance with Fed. R. App. P. 25(a)(5), Fed. R. Civ. P. 5.2, Fed. R. Crim. P. 49.1, or Fed. R. Bankr. P. 9037. This requirement applies to all documents, including attachments.

53. The 1974 Privacy Act, mandated privacy concerns from the government, making clear, the government would not share report consumers interactions with the private corporations. Federal courts do not share reports or contract with the CRAs, to gather consumers personal private, bankruptcy filings. This means bankruptcy reporting is willful violations of consumers "right to privacy".

54. Reporting of such bankruptcy can never be verified or validated (courts require redaction, same as pacer, and defendant furnishers do so without written authorization from Plaintiff consumer (violation of Privacy Act below).

55. The prohibition proscribes the furnishing of information where the consumer has notified the furnisher that the information is inaccurate. 15 U.S.C. §§ 1681s-2(a)(1)(B)(i), 1681s-2(a)(1)(B)(ii).

56. The two accuracy standards must be read in conjunction with the subsection that immediately follows them establishing a duty to promptly correct and update furnished information determined to be incomplete or inaccurate. 15 U.S.C. § 1681s-2(a)(2)(B).

57. In general terms, furnishers are required to provide accurate, complete, and updated information. Boynton, FTC Informal Staff Opinion Letter (Feb. 15, 2000). These defendants have not.

58. Once a furnisher makes the decision to provide information about an account to a CRA, it of course must report accurately. Specifically, the furnisher must not furnish information it "knows or has reasonable cause to believe" is inaccurate.

**THE CALIFORNIA VERSION OF THE FCRA-CONSUMER CREDIT REPORTING AGENCIES ACT (CCRAA)**

59. The California version of the FCRA—the Consumer Credit Reporting Agencies Act (CCRAA)—has a standard similar to that of the FCRA in that it prohibits a furnisher from

providing information if it "knows or should know the information is incomplete or inaccurate." Cal. Civ. Code § 1785.25(a) (West). Unlike almost all other state laws governing furnisher accuracy, this California provision is specifically saved from preemption and is privately enforceable. Noori v. Bank of Am., 710 Fed. Appx. 757 (9th Cir. 2018); Gorman v. Wolpoff & Abramson, L.L.P., 584 F.3d 1147 (9th Cir. 2009). Thus, California residents have the ability to bring claims against furnishers for furnishing inaccurate information without first lodging a dispute with a CRA. Brooks v. Bank of Am., 2021 WL 1541643 (S.D. Cal. Apr. 20, 2021) (sustaining inaccurate reporting claim; "dismissal of the CCRAA claim requires this Court to definitively conclude that Defendant's actions, as stated, were reasonable . . . [S]uch determinations require the Court to consider evidence regarding what information defendants had or should have had access to at the time of reporting, which, at the earliest, occurs at summary judgment").

60. Moreover, should a furnisher fail to correct a dispute sent directly to it by the consumer, and then fail to conduct an adequate investigation following a section 1681*i*(a) dispute later lodged with the CRA, ***(which is our case at bar)*** its knowledge of the dispute and culpability in eventual litigation will be all the more apparent. Saunders v. Branch Banking & Tr. Co. of Va., 526 F.3d 142 (4th Cir. 2008) (placing furnisher's misconduct in context of consumer's "ongoing dispute" to affirm jury's determination of willfulness and award of punitive damages).

61. Any furnisher who negligently fails to comply with any of its investigation duties is liable to the consumer for actual damages, the costs of litigation, and attorney fees. 15 U.S.C. § 1681o. Arriaga v. Wells Fargo Bank, 2011 WL 4738522 (N.D. Ill. Sept. 30, 2011).

62. The strongest case is one where reasonable minds cannot differ because the disputed information is objectively incorrect or incomplete. Pittman v. Experian Info. Sols., Inc., 901 F.3d 619 (6th Cir. 2018), Weinstein v. Equifax Info. Servs., L.L.C., 2019 WL 2610954 (C.D. Cal. May 6, 2019), Henry v. Ocwen Loan Servicing, L.L.C., 2018 WL 3130422 (S.D. W. Va. June 25, 2018) (denying dismissal because complaint alleged clear inaccuracy that "simple investigation would reveal"); Asufrin v. Roundpoint Mortg. Servicing Corp., 2016 WL 1056669 (N.D. Ill. Mar. 17, 2016) ("Plaintiff asserts that after reporting the dispute to the CRAs, and after the CRAs notified Defendant furnishers of the dispute, Defendant's reporting were still inaccurate. *In our case, several disputes to big 3 CRA's and directly to furnisher CRA's, and they all continued to report the inaccuracies at their own peril.* These assertions support the reasonable inference that Defendants failed to investigate, reinvestigate or properly report disputed information."); In that event, if the furnisher still rejects the dispute or the CRA continues to report the information, each necessarily will be shown to have breached its duties to conduct a reasonable investigation since it will have disregarded incontrovertible facts.

63. Numerous cases uphold a Consumers right to seek relief. Furnishers are required to undertake five enumerated duties upon receipt of a notice that the consumer has disputed the accuracy or completeness of any information provided by that furnisher with a consumer reporting agency. 15 U.S.C. § 1681s-2(b)(1)(A) to § 1681s-2(b)(1)(E). Any furnisher who fails to comply with any of these five section 1681s-2(b) duties *is liable to the consumer in a private cause of action for its negligent or willful noncompliance.* 15 U.S.C. §§ 1681n, 1681*o*. Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611 (6th Cir. 2012) ("[The] FCRA expressly creates a private right of action against a furnisher who fails to satisfy one of five duties identified in §1681s-2(b)"). *Accord* Snyder v. Nationstar Mortg. L.L.C., 2015

WL 7075622, at *6 (N.D. Cal. Nov. 13, 2015) (duties under § 1681s-2(b) are "independent and severable," *citing* Wang v. Asset Acceptance L.L.C., 2010 WL 2985503, at *5 (N.D. Cal. July 27, 2010), ***and FCRA provides private remedy "if such furnisher breaches any of the duties enumerated in section 1681s-2(b),"*** *citing* King v. Bank of Am., 2012 WL 4685993 (N.D. Cal. Oct. 1, 2012) .

64. Standards for reinvestigation that Defendants did not perform. Defendants furnisher liability confirmed that the investigation must be a substantive examination of the merits of the consumer's dispute. Johnson v. MBNA Am. Bank, 357 F.3d 426, 431 (4th Cir. 2003). Malm v. Household Bank, 2004 WL 1559370 (D. Minn. July 7, 2004). The court stated that a reasonable investigation "requires some degree of careful inquiry" as opposed to a merely "superficial" inquiry. Johnson v. MBNA Am. Bank, 357 F.3d 426, 430 (4th Cir. 2003).

65. Therefore, just as the CRA's "reasonable investigation" may not simply "parrot" the furnisher's position, Cushman v. Trans Union Corp., 115 F.3d 220 (3d Cir. 1997), the furnisher's "reasonable investigation" must contain a "qualitative component" and thus may not merely beg the question by confirming simply that the disputed information itself is being faithfully conveyed to the CRA. Johnson v. MBNA Am. Bank, 357 F.3d 426, 430 (4th Cir. 2003).

*66.* In our case the proper response for furnishers who determine that the evidence necessary to verify disputed information either does not exist or is too burdensome to acquire" would be to "cease investigation and notify the CRAs that the information 'cannot be verified.'" The Court noted that "[t]his framework reflects the fact that § 1681-2(b) is designed ***not only to exclude false information from credit reports, but also to prevent the reporting of unverifiable information."***

67. All Defendants failed to reasonably investigate and modify the allegedly inaccurate information, nor report the data was disputed.

**OBLIGATIONS WITH RESPECT TO DISCLOSURES OF PERSONAL INFORMATION AND NOTICE TO CONSUMER REQUIREMENTS**

68. Defendants are all classified as CRA's. CRA's are financial institutions. Trans Union LLC v. Federal Trade Commission (D.C. Cir. 2002) 295 F.3d 42. Under this case CRA's are considered lenders. They are required under the FCRA and the CCRAA to give 30 days' notice (before or after) placing negative information in one's consumer report. They don't and have not. They are also required to report affiliated companies (i.e.: Bank of America = Countrywide) and a financial interest in that company. See Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC as an example, not reported as affiliated companies. See 15 U.S. Code §6802 in the following paragraph.

69. Other non compliance with notice or reporting.

**15 USC 1681s-2**
(7) NEGATIVE INFORMATION

**(A) Notice to consumer required**

(i) In general

If any financial institution that extends credit and regularly and in the ordinary course of business furnishes information to a consumer reporting agency described in section 1681a(p) of this title furnishes negative information to such an agency regarding credit extended to a customer, the financial **institution shall provide a notice** of such furnishing of negative information, in writing, **to the customer**.

(B) Time of notice

(i) In general

The notice required under subparagraph (A) shall be provided to the customer prior to, or **no later than 30 days after**, furnishing the negative information to a consumer reporting agency described in section 1681a(p) of this title.

And

**15 U.S. Code §1681b - Permissible purposes of consumer reports**

(a) In general Subject to subsection (c), any consumer reporting agency may furnish a consumer report under the following circumstances **and no other:**

(1) In response to the order of a court having jurisdiction to issue such an order, a subpoena issued in connection with proceedings before a Federal grand jury, or a subpoena issued in accordance with section 5318 of title 31 or section 3486 of title 18.

(2) **In accordance with the written instructions of the consumer** to whom it relates.

And

(c) Furnishing reports in connection with credit or insurance transactions that are **not initiated by consumer**

(1)In general

A consumer reporting agency may furnish a consumer report relating to any consumer pursuant to subparagraph (A) or (C) of subsection (a)(3) in connection with any credit or insurance transaction that **is not initiated by the consumer** only if the **consumer** **authorizes** the agency to provide such report to such person;

And

**15 U.S. Code §6802 - Obligations with respect to disclosures of personal information**

**Notice requirements**

Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice that complies with section 6803 of this title.

(b) Opt out

(1)In general A financial institution may not disclose nonpublic personal information to a nonaffiliated third party unless—

(A) such **financial institution** clearly and conspicuously **discloses to the consumer**, in writing or in electronic form or other form permitted by the regulations prescribed under section 6804 of this title, that such information may be disclosed to such third party;

(B) the **consumer is given the opportunity**, before the time that such information is initially disclosed, to direct that such information **not be disclosed** to such third party;

And

**California Code, Civil Code §1785.26**

(a) As used in this section:

> (1) "Creditor" includes an agent or assignee of a creditor, including an agent engaged in administering or collecting the creditor's accounts.
> (b) **A creditor may submit negative credit information concerning a consumer to a consumer credit reporting agency, only if the creditor notifies the consumer affected.**
> (c) The **notice shall be in writing** and shall be delivered in person or mailed first class, postage prepaid, to the party's last known address, prior to or **within 30 days** after the transmission of the negative credit information.

70. Reporting of such bankruptcy clearly violate mechanisms set up by congress, with the Gramm-Leach-Biley Act, Dodd Frank Act, Ferpa Act, Fact Act, all enacted to help ensure the consumers right to privacy.

71. As you can see, it takes written instructions of the consumer, or the consumer authorizes the agency to provide such report, or the CRA's and furnishers have a known duty and obligation to notify, inform, let consumer OPT out, or get permission from the consumer, and in this case, Plaintiff. Plaintiff never gave permission nor received required notifications for distribution nor publication of his report, in violation of the above listed statutes.

## ARTICLE III STANDING

72. Plaintiff has been denied credit/service on more than one occasion, so Plaintiff has standing pursuant to Article III of the United States Constitution because he has suffered an injury in fact, the injury in fact is traceable to the challenged conduct of Defendants' actions described herein, and Plaintiff's injury in fact is likely to be redressed by a favorable judicial decision in this court.

73. Plaintiffs' injury is in fact both particular and concrete because he has suffered an invasion of a legally protected interest that is concrete because, particularized and actual or imminent. By way of example, Denied credit/services on more than one occasion and Plaintiff has spent a tremendous amount of time and energy to research Defendants, the FCRA has incurred time and expenses to fix the errors on his consumer reports. <u>Defendants acted with the</u>

willful and malicious intent to injure and cause harm to Plaintiff. Plaintiff has suffered anxiety, headaches, loss of sleep, humiliation and other negative emotions directly caused by Defendants' actions in their willful and neglect violations of the FCRA.

74. Upon information and belief, as cited in the Supreme Court Decision, "The irreducible constitutional minimum of standing consists of three elements: injury in fact, causation and redressability. (See Lujan v. Defendants of Wildlife, 504 U.S. 555, 560-1, 112 S. Ct 2130, 119 L.Ed.2d 351 (1992)).

75. Plaintiff is within the statute of limitations pursuant to the FCRA 1681p, and Defendants continued to "incorrectly misreport and misrepresent" inaccuracies through the end of 2023 and damage Plaintiff and thus Plaintiff's claims are not time-barred. Defendants' actions were willful and reckless and disregarded rules of the FCRA and CCRAA that were set up to protect Consumers. Defendants had ample opportunity to rectify.

**COUNT I**
**VIOLATION OF FAIR CREDIT REPORTING ACT (FDCPA), 15 U.S.C. §1681b and §1681e(a); AND NEGLIGENT OR WILLFUL NONCOMPLIANCE.**

76. Plaintiff alleges and incorporates the information in all previous paragraphs.

77. LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS, EXPERIAN, TRANSUNION, EQUIFAX negligently failed to comply with the requirements of FCRA including but not limited to:

a. failing to follow reasonable procedures to limit the furnishing of consumer reports to the purposes listed under section 1681b of the FCRA, as required by 15 USC § 1681e(a);

b. failing to comply with the requirements of 15 USC § 1681b;

c. failing to follow reasonable procedures to assure maximum possible accuracy of the information in reports concerning plaintiff, as required by 15 USC § 1681e(b);

d. failing to comply with the requirements of 15 USC § 1681g;

e. failing to comply with the requirements of 15 USC § 1681i; and

f. failing to comply with the requirements of 15 USC § 1681c-2.

78. As a result of all Defendant's failure to comply with the requirements of FCRA, plaintiff has suffered, and continues to suffer, actual damages, including economic loss, lost opportunity to receive credit, damage to reputation, invasion of privacy, interference with his normal and usual activities, emotional distress, anger, frustration, humiliation, anxiety, fear, worry and related health problems, for which plaintiff seeks damages in an amount to be determined by the jury.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against defendants; for the following:

A. Damages by LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS EXPERIAN, TRANSUNION, and EQUIFAX for either Negligent or Willful violations of Non-Compliance determined at trial.

B. Actual damages by denial of credit of: $200,000.

C. Punitive damages (if willful) to be determined at trial.

D. Costs and reasonable attorney fees pursuant to 15 U.S.C. §1681n or §1681o.

E. For such other and further relief as the court may deem just and proper.

**COUNT II**
**VIOLATION OF FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681s-2(b)**

79. Plaintiff alleges and incorporates the information in all previous paragraphs.

80. Plaintiff is a consumer per 15 U.S.C. §1681a(c).

81. LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS, EXPERIAN,

TRANSUNION, EQUIFAX are "Credit Reporting Agencies" or CRA's per 15 U.S.C. §1681a(f).

82.   Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS are furnishers per Sec 623(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s-2(a)(2)(A),

83.   Section 623(b)(1)(A) of the FCRA makes it unlawful for a furnisher of information to a Consumer reporting agency, upon receiving a notice of a Consumer dispute from the Consumer reporting agency, not to conduct a reasonable investigation of the disputed information. 15 U.S.C 1681s-2(b)" (See CFPB v Encore Capital Group, Inc., et al., CFPB File N. 2015-CFPB-022 at 124).

84.   The Consumer Data Industry Association ("CDIA") is a trade association that represents major institutions including CRAs, and provides Metro 2 regulatory compliance training workshops, and guidance for data furnishers such as LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS. The CDIA issues occasional memos for CRAs.

85.   Defendants knew (or should have known) that it was furnishing an item that that was "not the result of a contract or agreement to pay" between Plaintiff and ANY entity regarding the alleged account. Defendants knew (or should have known) that at all times relevant, they lacked standing to furnish the item.

86.   Defendants knew (or should have known), pursuant to the FCRA, Sec 623(b)(1)(E), [15 U.S.C 1681s-2(b)(1)(E)], with subsequent "NOTICE OF DISPUTE" sent to the CRAs, "if an item of information disputed by a consumer is found to be **inaccurate or incomplete or cannot be verified** after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency, only as appropriate, based on the result of the investigation promptly—

   i.   Modify the item of information;

ii.     Delete that item of information; or
iii.    Permanently block the reporting of that item of information

87.    Defendants knew (or should have known) to "review all relevant information provided by the consumer reporting agency pursuant to section 611(a)(2) [1681i]."

88.    Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS are a "furnisher" within the meaning of the 15 U.S.C.§1681s-2. 15 USC§1681s-2(a) prohibits furnishers from reporting inaccurate or erroneous information about consumers. As such, it placed an affirmative duty on furnishers to correct and update information which they know, or reasonably should know, is inaccurate. The subsection requires furnishers to flag or otherwise provide notice to credit reporting agencies of any "dispute" by a consumer related to his or her credit information or history, FCRA, 15 USC§1681s-2(a)(1)-(3). Plaintiffs' consumer credit report is a consumer report within the meaning of 15 U.S.C. §1681a(d).

89.    The FCRA, 15 U.S.C. 1681s-2(b) has Obligations regarding defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS as furnishers to investigate consumers disputes. Subsection 1681s-2(b) specifies a second set of obligations on a furnisher. These obligations are triggered once a credit reporting agency CRA notifies the furnisher that it has received a "notice of dispute" from the consumer pursuant to 15 U.S.C. § 1681s-2(a)(2). After the disputes are received by a CRA from a consumer, it, in turn, is required under § 1681i of the FCRA to forward a consumer dispute verification (CDV) form to the furnisher, requiring it to verify the credit information and investigate its accuracy.

90.    After receiving notice of such a dispute from a CRA, a furnisher has 5 mandatory duties it must perform within 30 days:

a.  to conduct "an investigation" with respect to the disputed information;
b.  to "review all relevant information" provided by the credit reporting agency;
c.  to "report the results of its investigation" back to the credit reporting agency;

d. if the investigation finds the existing information is incomplete or inaccurate, to report back those results to each of the consumer reporting agencies to whom the furnisher originally communicated information about the consumer; and

e. to "modify, . . .delete. . .or. . .permanently block" the reporting of any item of information found to be inaccurate, incomplete, or which cannot be verified as accurate after a reinvestigation. 15 U.S.C. § 1681s-2(b)(1).

91.     In §1681s-2(b) duties arise only after a furnisher receives notice of dispute from a CRA. Notice of a dispute to a furnisher by a consumer directly does *not* trigger a furnisher's duty to reinvestigate under §1681s-2(b). The consumer must dispute to a CRA, which, in turn, forwards the dispute to the furnisher. This indirect "filtering" mechanism must be followed by a consumer to give rise to a duty of investigation *under the FCRA* to the furnisher. **(Plaintiff has done so several times going back to 2015)** A furnisher need not honor a dispute received directly from the consumer, whether oral or written, under the FCRA §1681s-2(b), but has it own requirements if directly disputed by consumer to furnisher.

92.     Plaintiff notified Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, (brother/sister) directly thru letter to LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS and thru letters thru CRA's EXPERIAN, TRANSUNION, EQUIFAX of its dispute and defendants also and failed to correct or delete information found to be inaccurate and erroneous, and or failed to properly investigate Plaintiff's disputes.

93.     This imposed a heightened duty and obligation for the furnisher to reinvestigate. Plaintiff alleges that at all relevant times all Defendants failed to maintain, and failed to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, concerning the account in question, violating 15 U.S.C. § 1681e(b). Plaintiff alleges that all Defendants failed to conduct a proper and lawful reinvestigation.

94.     All actions taken by the Defendants thru the CRA's were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the

knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FCRA and state law and/or that knew or should have known that their actions were in reckless disregard of the FCRA and state law. Defendants and each of their acts constitutes multiple willful non-compliance with FCRA.

95. All Defendants violated the FCRA 15 U.S.C. §1681s-2(b) by continuing their representation within Plaintiff's credit file with all CRA's without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute by failing to review all relevant information regarding same; by failing to accurately respond to the CRA's; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS representations to the CRA's.

96. As a result of this conduct, action and inaction of defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and inaccurate CRA reporting's to general public.

97. Defendants conduct, action and inaction was willful, rendering it liable for actual or statutory, and punitive damages in an amount to be determined by the court pursuant to 15 U.S.C. §1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. §1681o.

98. Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS, EXPERIAN, TRANSUNION, and EQUIFAX knew (or should have known) that **any person** who fails to comply with **any requirement** imposed pursuant to the FCRA with respect to **any consumer** is

liable to that consumer. (Emphasis added). Defendants, and each of them, at all times relevant herein, were the principles, agents employers, employees, and ratified, or approved of the acts or omissions alleged herein with respect to the willful and/or negligent violations of the FCRA, and were acting in the course and scope of the authority's such principals, agents, employers, and employees.

99.     Plaintiff's several dispute letters demanding reinvestigation conferred a known duty and obligation on defendants. Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS, continued to report inaccurate information to the CRA's, certifying to each CRA the information was accurate. Defendants LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS, EXPERIAN, TRANSUNION, and EQUIFAX continued to NOT properly reinvestigate and report erroneous and inaccurate data to the public regarding Plaintiff.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against defendants; for the following:

A.     Statutory damages by LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS
       EXPERIAN,  TRANSUNION, and EQUIFAX pursuant to 15 U.S.C. §1681n;
       $1,000 for each month of inaccurate reporting (24 months) to each CRA
       (EXPERIAN, TRANSUNION, EQUIFAX, 3 total) (8 defendants x $3000 month x
       24 months) for a total of : $576,000.

B.     Actual damages by denial of credit of: $200,000.

C.     Punitive damages to be determined at trial;

D.     Costs and reasonable attorney fees pursuant to 15 U.S.C. §1681n or §1681o.

E.     For such other and further relief as the court may deem just and proper.

**COUNT III**
**VIOLATION OF CALIFORNIA CIVIL CODE §1785 *it seq* (CCRAA), BY DEFENDANTS'**

100. Plaintiff alleges and incorporates the information in all previous paragraphs.

101. Plaintiff is a consumer and a natural person per Civil Code §1785.3, and corresponding state statutes.

102. Defendants, all of them, have not complied with CALIFORNIA CIVIL CODE §1785 *et seq* by willfully reporting 'negative credit information concerning the credit history of Plaintiff and adversely affected the ability of Plaintiff to obtain or maintain positive credit.

103. This statute states that a person shall not furnish information to any consumer credit reporting agency if they know the information is incomplete or inaccurate.

104. Defendants have received Plaintiffs notice of dispute and request to validate or verify the negative data they were reporting, thereby placing a duty and obligation to investigate.

105. Defendants, all of them, did not investigate and violated this statute by submitting negative credit information to CRA's without proper (actually no) notice.

106. Defendants are liable for failure to provide notice pursuant to this section, unless they can establish by a preponderance of the evidence, that they maintained reasonable procedures to comply with this section. The plaintiff has never received any notice of any kind.

WHEREFORE, Plaintiff CUPP respectfully requests that judgment be entered against defendants; for the following:

A. Damages by LEXISNEXIS, LEXIS INC. LEXIS LLC, LCI, EWS EXPERIAN, TRANSUNION, and EQUIFAX for either Negligent or Willful violations of Non-Compliance.

B. Actual damages by denial of credit of: $200,000.

B. Punitive damages (if willful) to be determined at trial;

C. Costs and reasonable attorney fees pursuant to statute.

D. For such other and further relief as the court may deem just and proper.

**COUNT V**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**BY ALL DEFENDANTS.**

107. Plaintiff alleges and incorporates the information in all previous paragraphs.

108. It appears the ultimate facts constituting the outrageous conduct underlying the cause of action outlined below:

a. Defendants not stopping further inaccurate reporting when Plaintiff disputed data.
b. Defendants not validating or verifying the inaccuracies as required.
c. Defendants reporting inaccurate information on Plaintiffs public credit reports.
d. Defendants not reporting on Credit Reports the debt is disputed.
e. Defendants continuing to report their inaccuracies that they knew or should have known was unverified, unvalidated, disputed.

109. Defendant's actions were outrageous, intentional, and malicious, and done with reckless disregard of the fact that the actions would certainly cause Plaintiffs to suffer severe emotional and physical distress.

110. As a proximate result of the acts of Defendant's, Plaintiff's suffered manifestations of severe emotional distress, specifically in the form of humiliation, mental anguish, anxiety, emotional distress, psychosis, loss of sleep, loss of appetite, and fear. The acts of Defendants have injured Plaintiff's in mind and body. Some of the manifestations of Defendants conduct on Plaintiff, noticed changes to his well-being. This was discovered by Plaintiff and by others who reported to Plaintiff the following observations. Nervousness, becoming sick right after the denial of credit because of CRA's, stress, unable to focus or keep a train of thought for a period of time, loss of sleep, loss of appetite, lack of patience with others and anger right after receiving Defendant's collection calls.

111. Defendant's conduct was done knowingly, willfully, and with malicious intent, and Plaintiff is entitled to punitive damages in an amount to be determined by proof at trial.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against l defendants, jointly and severally, for the following:

A. Intentional infliction of emotional distress in the amount to be determined at trial.

B. Costs and reasonable attorney fees.

C. For such other and further relief as the court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury of all issues so triable as a matter of law.

Dated: January 23, 2024

Respectfully submitted

*/s/ Ronald Cupp*
RONALD CUPP
Plaintiff Pro Se